**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN HIGHHOUSE,** | : | **No. 3:16cv78** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **WAYNE HIGHLANDS SCHOOL DISTRICT;** | : | |
| **GREGORY FRIGOLETTO, individually and** | : | |
| **in his official capacity as Superintendent;** | : | |
| **DIANE SCARFALLOTO, individually and** | : | |
| **in her official capacity as Principal;** | : | |
| **JOHN KRETSCHMER, individually and in** | : | |
| **his official capacity as Vice Principal; and** | : | |
| **GORDON WEST, individually and in his** | : | |
| **official capacity as Teacher,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Defendants Gordon West and John Kretschmer, Wayne Highlands School District employees, strip searched a male high school student, Plaintiff Ryan Highhouse (hereinafter "plaintiff"), on February 11, 2014 at Honesdale High School, believing he stole $250 from another student during gym class.  Plaintiff asserts that his seizure and subsequent strip search were unlawful, and he brings the instant civil rights suit against Defendants Wayne Highlands School District (hereinafter "School District") Gregory Frigoletto, Diane Scarfalloto, John Kretschmer and Gordon West (collectively "defendants").  Before the court for disposition is defendants' motion to dismiss plaintiff's amended complaint.  For the reasons explained below, we will grant in part and deny in part defendants' motion.

**Background**

This case arises from a high school vice principal and a teacher's strip search of a male student.  On February 11, 2014, plaintiff, a sixteen (16) year-old high school student, attended Honesdale High School located in Wayne County, Pennsylvania.  (Doc. 12, Am. Compl. (hereinafter "Am. Compl.") ¶¶ 16, 19a).  Plaintiff alleges that Defendants Gordon West and John Kretschmer, a high school teacher and vice principal, respectively, received a complaint from another student, M.O.[1] (Id. ¶ 19).  Specifically, M.O. advised Defendants West and Kretschmer that he could not find $250, which he left in the in the gym locker room. (Id)

Defendants West and Kretschmer summoned plaintiff, confined him to a room, and questioned him regarding the missing $250.[2]  (Id. ¶¶ 17-18).  At some point during the questioning, Defendants West and Kretschmer directed plaintiff to remove his clothing down to his underwear.  (Id. ¶ 17).  Plaintiff complied and stripped down to his underwear.  (Id.)  Defendants West and Kretschmer next pulled on the

---

[1] The court will refer to this minor individual only by his initials.  See Local Rule 5.2(d)(2); FED. R. CIV. P. 5.2.

[2]  Apparently, Defendants West and Kretschmer believed plaintiff stole the $250, because plaintiff was the only person alone in the locker room when the money was stolen.  (Am. Compl. ¶ 19).

elastic waistband of plaintiff's underwear, exposing plaintiff's pubic and anal areas.  (Id. ¶ 18).  The complaint is silent regarding whether Defendants West and Kretschmer recovered the missing $250.

On January 14, 2016, plaintiff filed a two-count complaint against the defendants.  (Doc. 1, Compl.).  Count I asserts federal civil rights claims under the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.  (Id. ¶¶ 28-34).  Count II avers claims under the Pennsylvania Constitution.  (Id. ¶¶ 35-37).  Plaintiff seeks compensatory and punitive damages in the *ad damnum* clauses of Counts I and II.  (Id. ¶¶ 34, 37).

On April 6, 2016, plaintiff filed an amended complaint, asserting the same causes of action.  (Doc. 12).  The defendants filed a motion to dismiss plaintiff's amended complaint on April 20, 2016.  (Doc. 14).  The parties have briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over this civil rights action brought under 42 U.S.C. § 1983 (hereinafter "section 1983").  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).  We have supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## Legal Standard

The defendants filed their motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next

stage of litigation." Id. at 234-35.  In evaluating the sufficiency of a complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court need not accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Defendants move to dismiss plaintiff's federal civil rights and punitive damages claims, and plaintiff's claims pursuant to the Pennsylvania Constitution.  Plaintiff concedes that his Pennsylvania constitutional claims asserted in Count II should be dismissed.  (Doc. 17, Pl.'s Br. in Opp'n at 3-4).  Therefore, the court will grant defendants' motion to dismiss Count II as unopposed.

Plaintiff argues, however, that his federal civil rights and punitive damages claims are sufficiently alleged.  Accordingly, we will examine the amended complaint to determine if plaintiff has properly pled federal civil rights and punitive damages claims against the defendants.

## I. Plaintiff's section 1983 claims

Defendants seek to dismiss all of plaintiff's federal civil rights claims against them.  Plaintiff asserts his federal civil rights claims pursuant to section 1983.  Section 1983 does not, by its own terms, create substantive rights.  Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to establish a claim under section 1983, two criteria must be met.  First, the conduct complained of must have been committed by a person acting under color of state law.  Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).  Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law.  Id.  Here, the parties do not contest the defendants were acting under state law.  Rather, the parties disagree as to whether the defendants deprived plaintiff of his constitutional rights.

The defendants challenge plaintiff's federal civil rights claims on six

grounds.  First, Defendants Frigoletto and Scarfalloto move to dismiss all civil rights claims against them, arguing they had no personal involvement in the alleged unconstitutional conduct.  Second, the individual defendants seek the dismissal of all claims against them in their official capacities as duplicative of the claims against the School District.  Third, Defendants West and Kretschmer contend their seizure and strip search of plaintiff did not violate plaintiff's Fourth Amendment rights.  Fourth, defendants argue plaintiff has failed to state a cause of action pursuant to the Fifth Amendment.  Fifth, the individual defendants assert qualified immunity shields them from liability pertaining to plaintiff's civil rights claims.  Sixth, defendants argue that plaintiff's municipal liability claim should be dismissed because plaintiff failed to identify any policy, practice, or custom that caused plaintiff's injuries.

We will briefly discuss defendants' first two arguments.  Defendants Frigoletto and Scarfalloto, the school superintendent and principal, respectively, first move to dismiss all civil rights claims against them, arguing they had no personal involvement in the alleged unconstitutional conduct.  In section 1983 cases, it is well established that *respondeat superior* is not a viable theory.  Monell v. NYC Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Rather, the Supreme Court of the United States

7

has held that supervisor liability can only be imposed in section 1983 claims if that supervisor played an "affirmative part" in the complained-of misconduct.  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a section 1983 suit–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer.")

Absent vicarious liability, each government official, his or her title notwithstanding, is only liable for his or her own misconduct.  To set forth an action for supervisory liability under section 1983, a "plaintiff must demonstrate that the supervising officials: (1) personally participated in violating a person's rights; (2) directed others to violate a person's rights; or (3) had knowledge of and acquiesced in a subordinate's violation of a person's rights."  Simonton v. Tennis, 437 F. App'x 60, 64 (3d Cir. 2011) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 76-78 (2006)).

As discussed in detail below, plaintiff has failed to allege that Defendants Frigoletto and Scarfalloto participated in violating or directed Defendants West and Kretschmer to violate plaintiff's constitutional rights. Additionally, the complaint fails to state that Frigoletto and Scarfalloto actually knew or acquiesced in West and Kretschmer's alleged

unconstitutional conduct.  Where a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  As such, the court will dismiss all federal civil rights claims against Defendants Frigoletto and Scarfalloto.  Defendants West and Kretschmer, the defendants that actually strip searched the plaintiff, therefore, remain as the only individual defendants in this case.

Next, Defendants West and Kretschmer seek the dismissal of all claims against them in their official capacities as duplicative of the claims against the School District.  Official capacity actions are redundant where the entity for which the individuals worked is named.  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Accordingly, the court will dismiss  plaintiff's claims against the individual defendants in their official capacities because the School District is also named in each surviving claim where individual defendants are named.

Having disposed of the defendants' first two arguments, the court will

next address the remainder of defendants' arguments pertaining to plaintiff's Fourth, Fifth, and Fourteenth Amendment claims against Defendants West and Kretschmer and the School District.

## A.  Fourth Amendment unlawful search and seizure

Plaintiff claims that Defendants West and Kretschmer subjected him to an unlawful search and seizure in violation of his Fourth Amendment rights.  These defendants contend that plaintiff has not pled sufficient facts to reasonably infer that they unlawfully searched and seized plaintiff.  After a careful review, the court agrees with plaintiff.

The Fourth Amendment protects against state officials conducting unlawful searches and seizures.  Safford Unified Sch. Dist #1 v. Redding, 557 U.S. 364, 370 (2009).  Generally, Fourth Amendment rights extend to public school students.  Id.; see also New Jersey v. T.L.O., 469 U.S. 325, 336-37 (1985) ("In carrying out searches and other disciplinary functions pursuant to [educational and disciplinary] policies, school officials act as representatives of the State . . . , and they cannot claim . . . immunity from the strictures of the Fourth Amendment.").

To establish a Fourth Amendment unlawful search and seizure claim against a public school, the plaintiff must allege the following two elements: 1) a search and seizure occurred and 2) the search and seizure

10

are unreasonable under the circumstances.  <u>Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.</u>, 422 F. 3d 141, 147-48 (3d Cir. 2005).  Here, the parties do not dispute Defendants West and Kretschmer searched and seized plaintiff.  Rather, the parties disagree regarding whether the search and seizure were unreasonable.

In 2009, the Supreme Court of the United States decided <u>Safford Unified School District #1 v. Redding</u>, 557 U.S. 364 (2009), which addressed the constitutional rule for searches and seizures in the public school setting.  In <u>Safford</u>, the Supreme Court reaffirmed its general rule regarding school searches and seizures, stating that a court must apply "a standard of reasonable suspicion to determine the legality of a school administrator's search of a student[.]"  557 U.S. at 370 (citation omitted). Specifically, "a school search 'will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.'"  <u>Id.</u> (quoting <u>T.L.O.</u>, 469 U.S. at 342).  Stated differently, school officials may search if what they know creates only "a moderate chance of finding evidence of wrongdoing"–that is, evidence of violating school rules, such as a ban on having drugs.  <u>Id.</u> at 371.

<u>Safford</u>, however, also created a new rule pertaining to strip

searches.  In Safford, the school administrators required the female student, standing in a school office in her underwear, to "pull out" her bra and the elastic band on her underpants for inspection.  Id. at 374. Addressing the administrator's testimony that they did not see any of the student's exposed chest or pubic areas, the Supreme Court noted that the constitutionality of the search "does not depend upon who was looking and how much was seen."  Id.  Significantly, the school required this student to expose her private areas "to some degree", which is a search "categorically distinct" under the constitution, "requiring distinct elements of justification on the part of school authorities for going beyond a search of outer clothing and belongings."  Id.

To establish this new constitutional rule pertaining to school authorities strip searching students, the Supreme Court first addressed the student's subjective expectation of privacy.  The Court noted that strip searches objectify students and demean and degrade their inherent human dignity "as embarrassing, frightening, and humiliating."  Id. at 374-75.  Furthermore,

> The reasonableness of [a student's] expectation (required by the Fourth Amendment standard) is indicated by the consistent experiences of other young people similarly searched, whose adolescent vulnerability intensifies the patent intrusiveness of the exposure.  The common reaction of these adolescents simply registers the obviously different

> meaning of a search exposing the body from the experience
> of nakedness or near undress in other school circumstances.
> Changing for gym is getting ready for play; exposing for a
> search is responding to an accusation reserved for
> suspected wrongdoers and fairly understood as so degrading
> that a number of communities have decided that strip
> searches in schools are never reasonable and have banned
> them no matter what the facts may be[.]

Id. at 375 (internal citations omitted).

To justify this kind of intrusion, the Supreme Court held that school

officials must have some evidence that the drug or other item they suspect

is being hidden by the student is dangerous in terms of its "power or

quantity", or must have some reason to suppose that the forbidden item is

hidden in a student's underwear.  Id. at 376-77.  In short, for a school

search to be reasonable in scope, the constitution "requires the support of

reasonable suspicion of danger or of resort to underwear for hiding

evidence of wrongdoing before a search can reasonably make the

quantum leap from outer clothes and backpacks to exposure of intimate

parts."  Id. at 377.  This is so because "[t]he meaning of such a search,

and the degradation its subject may reasonably feel, place a search that

intrusive in a category of its own demanding its own specific suspicions."

Id.

In the instant matter, plaintiff alleges that Defendants West and

Kretschmer lacked both kinds of information prior to conducting a strip

search.  (Am. Compl. ¶ 20).  First, the missing $250 posed no danger, in

terms of its power or quantity, to the students or school administrators.

(Id. ¶¶ 16-20).  Unlike a weapon or drugs, currency, such as the $250,

cannot be used as a means to inflict physical harm or damage to students

or school employees.  Second, Defendants West and Kretschmer had no

reason to believe that students hide money in their underwear.  (Id.)

Viewing plaintiff's allegations as true, plaintiff has adequately pled that

Defendants West and Kretschmer's strip search on February 11, 2014

may have violated his Fourth Amendment rights.

## B.  Fifth Amendment Due Process

Count I of plaintiff's amended complaint asserts a Fifth Amendment

Due Process claim against Defendants West and Kretschmer.  The Fifth

Amendment to the United States Constitution provides, in part, that "[n]o

person shall . . . be deprived of life, liberty, or property, without due

process of law."  U.S. CONST. AMEND. V.  It is well-established, however,

that the Fifth Amendment restricts the actions of federal officials, not state

actors.  Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir.

1983).  Defendants West and Kretschmer are municipal school district

employees, not federal officials.  Ergo, the Fifth Amendment offers no

legal recourse to plaintiff, and the court will grant the defendants' motion

to dismiss plaintiff's section 1983 claim for a violation of the Fifth Amendment.[3]

## C. Qualified Immunity

Next, Defendants West and Kretschmer argue that the doctrine of qualified immunity shields them from liability regarding plaintiff's unlawful search and seizure claims.  Qualified immunity can serve as a defense to an individual defendant accused of a civil rights violation.  Hunter v. Bryant, 502 U.S. 224, 227 (1991).  "A government official sued under [section] 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Carroll v. Carman, 135 S. Ct. 348, 350 (2014).

For a qualified immunity analysis, therefore, the court must examine: 1) whether the officials violated a constitutional right and 2) whether that right was clearly established at the time.  Wright v. City of Phila., 409 F.3d 595, 699-700 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The Third Circuit Court of Appeals has held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."  Leveto v. Lapina, 258 F.3d 156,

---

[3]  The court will dismiss this claim with prejudice as an amendment would be futile.  See Alston, 363 F.3d at 235 (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

161 (3d Cir. 2001) (internal quotations and citations omitted).

We have previously concluded that plaintiff has alleged sufficient facts to establish a violation of his rights under the Fourth Amendment–namely the right of a student to be free from an unreasonable strip search and seizure in violation of the Fourth Amendment.  Thus, whether Defendants West and Kretschmer are entitled to qualified immunity turns on whether that right was "clearly established" at the time of their actions.  Estate of Lagano v. Bergen Cnty. Prosecutor's Office, 769 F.3d 850, 858 (3d Cir. 2014).

A legal right is "clearly established" where "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate.  This doctrine gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."  Carroll, 135 S. Ct. at 350.

As previously discussed, the Supreme Court of the United States decided Safford on June 25, 2009, four and one-half (4½) years, before the alleged strip search occurred in this case.  The legal contours

regarding school employees strip searching students, therefore, were clearly established at the time this strip search occurred on February 11, 2014.  Specifically, for a school search to be reasonable in scope, the constitution "requires the support of reasonable suspicion of danger or of resort to underwear for hiding evidence of wrongdoing before a search can reasonably make the quantum leap from outer clothes and backpacks to exposure of intimate parts."  Safford, 557 U.S. at 377.  Accordingly, at this juncture, qualified immunity fails to shield Defendants West and Kretschmer from individual liability.

## D.  Municipal liability

The defendants' final issue pertains to the School District as a defendant in the section 1983 civil rights claims raised in Count I.  As explained more fully below, for a municipal entity, such as a school district, to be liable on a civil rights claim, the violation of the plaintiff's civil rights must have been caused by a policy or custom of that municipal entity. Defendants argue that plaintiff has failed to allege a proper policy or custom, therefore the School District should be dismissed from Count I. Plaintiff asserts that the complaint properly alleges municipal liability against the School District.  After a careful review, we agree with plaintiff.

Plaintiff seeks to hold the School District responsible for the civil

rights violation committed by its employees.  Municipal employers, such as school districts, however, cannot be held vicariously liable for the constitutional violations committed by their employees.[4]  Monell, 436 U.S. at 694.  Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation. Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 1997).   A policy may be established several different ways, including a municipality's failure to train its employees.  See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989) (explaining that a failure to train may represent a policy that will support municipal liability).  Plaintiff's brief indicates that he seeks to establish a municipal policy based upon the school district's failure to adequately train Defendants West and Kretschmer.

Once a plaintiff identifies the "policy" at issue, he must demonstrate causation, that is, that the municipality through its policy was the "'moving force' behind the injury." Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)).  Where the policy does not facially violate the Constitution, causation is established by demonstrating **deliberate**

---

[4]  School Districts, such as Defendant Wayne Highlands School District, are considered municipal entities regarding section 1983 liability. Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006); Moeck v. Pleasant Valley Sch. Dist., 983 F. Supp. 2d 516, 523-24 (M.D. Pa. 2013).

18

**indifference** to the policy's known or obvious consequences. Id. (emphasis added). "Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." Id. (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)).

If no pattern of violations exists, the plaintiff bears a high burden to establish deliberate indifference. He must demonstrate that the violation of federal rights was a highly predictable consequence of the municipality's failure to train its employees regarding how to handle recurring situations. Id. The fact that a situation is likely to recur and the predictability that a municipal employee will violate federal rights without adequate training can reflect deliberate indifference. Id.

Plaintiff's amended complaint alleges that prior to the incident, the School District failed to train its employees regarding "the proper exercise of its employees' disciplinary and investigatory powers, including improper detentions and searches of students." (Am. Compl. ¶ 31). The School District also failed to train its employees pertaining to the employees following "established policies, procedures, directives and instructions regarding the search and/or detention of the Plaintiff, and others under [similar] circumstances." (Id.) The complaint further alleges that the

19

School District "failed to properly sanction or discipline teachers and other staff, who are aware of and subsequently conceal and/or aid and abed violations of constitutional rights of [students] . . . ."  (Id. ¶ 32).

We find that plaintiff has made sufficient allegations to support causation based upon a failure to train policy.  Read in conjunction with plaintiff's factual averments, these allegations may impose municipal liability against the School District.  As such, the portion of the motion to dismiss attacking municipal liability will be denied.

## II. Punitive Damages

Finally, defendants move to dismiss plaintiff's claim for punitive damages, arguing that punitive damages are not available against the School District or the other defendants in their official capacities.  We agree.

Punitive damages are not available against the School District or the individual defendants in their official capacities.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (holding that punitive damages cannot be awarded against municipalities); Graham, 473 U.S. at 167 n.13 (determining that suits against individual defendants in their official capacities are equivalent to suits against the municipalities that employed them, therefore, the individual defendants are immune from

punitive damages).  The only question that remains, therefore, is whether to dismiss plaintiff's claim for punitive damages against Defendants West and Kretschmer in their individual capacities.

"[A] jury may be permitted to assess punitive damages in an action under [section] 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).

In the instant case, plaintiff has sufficiently pled that Defendants West and Kretschmer's actions evinced a reckless or callous indifference to plaintiff's federally protected rights.  Specifically, Defendants West and Kretschmer lacked a reasonable suspicion that the missing $250 posed a danger to students or that students steal money and hide it in their underwear.  (Am. Compl. ¶ 20).  Additionally, Defendants West and Kretschmer summarily dismissed plaintiff's request to have his mother present–even though plaintiff's mother was present in the school building at the same time Defendants West and Kretschmer strip searched plaintiff.  (Id. ¶ 21).  Read in conjunction with plaintiff's factual averments, these allegations may demonstrate that Defendants West and Kretschmer's actions evinced a reckless or callous indifference to

21

plaintiff's federally protected rights.  Thus, it is inappropriate to dismiss plaintiff's punitive damages claim against Defendants West and Kretschmer at this time.

**Conclusion**

For the above-stated reasons, the court will grant in part and deny in part defendants' motion to dismiss.  The court will grant defendants' motion to dismiss Count II, plaintiff's claims under the Pennsylvania Constitution.  The court will dismiss Defendants Frigoletto and Scarfalloto from this case as plaintiff failed to allege these defendants participated in violating or directed Defendants West and Kretschmer to violate plaintiff's constitutional rights.  The court will also dismiss all claims against Defendants West and Kretschmer in their official capacities as duplicative of plaintiff's claim against the School District.  Finally, the court will dismiss plaintiff's Fifth Amendment claim.

Thus, remaining in this case are the following claims and defendants: 1) unlawful search and seizure claim in violation of the Fourth and Fourteenth Amendments against Defendants West and Kretschmer; 2) Fourteenth Amendment municipal liability failure to train claim against the School District; and 3) punitive damages claim against Defendants West and Kretschmer in their individual capacities.  An appropriate order

follows.


**Date:  09/07/2016**                    **s/ James M. Munley**
                                         **JUDGE JAMES M. MUNLEY**
                                         **United States District Court**